**UNITED STATES of America,
Appellee,**

v.

**Steve GOMORI, Jr., Appellant.**

**No. 13939.**

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 2, 1970.

Decided Jan. 29, 1971.

Leonard Z. Alpert, Weirton, W. Va., for appellant.

Leslie D. Lucas, Jr., U. S. Atty., for appellee.

Before HAYNSWORTH, Chief Judge, and BOREMAN and WINTER, Circuit Judges.

HAYNSWORTH, Chief Judge:

Convicted of interstate transportation of stolen property in violation of 18 U. S.C. § 2314, Gomori urges a number of grounds for reversal, chiefly that the search of his truck which resulted in the discovery of stolen cigarettes was in violation of the Fourth Amendment. We find no error and affirm.

At approximately 8:00 p. m. one night, Trooper Garrett, a member of the West Virginia Department of Public Safety, while on routine patrol in West Virginia's northern panhandle, observed an Avis rental truck being operated by Gomori. Pursuant to a recent departmental memorandum instructing state police to investigate the cargoes of rental trucks, Trooper Garrett stopped the truck.[1] Upon request Gomori exhibited his operator's license, registration card and truck lease papers, all of which appeared to be in order. However, Trooper Garrett's suspicions became aroused when Gomori, whose lease agreement indicated that he carried a cargo of furniture and whose truck was resting on its overload or helper springs, stated that he was carrying nothing in the truck. At this point Trooper Garrett twice requested permission to look into the truck and was twice refused. He then informed Gomori that the department believed that stolen goods were being carried in some rental trucks and again requested permission, which was again denied. Finally he stated that if necessary he would obtain a warrant to search the truck, at which time Gomori reluctantly agreed to the search. On opening the back gate Trooper Garrett discovered a cargo of untaxed cigarettes, which were later determined to have been stolen in Pennsylvania.

Gomori's argument that his consent was coerced is persuasive, but it avails him nothing for the lawfulness of the search was not dependent upon consent. There was probable cause for the trooper to believe that the truck was carrying stolen goods or contraband, and under the circumstances, a warrant was unnecessary.

"[F]or the purposes of the Fourth Amendment there is a constitutional difference between houses and cars." [2] It has long been held that an officer possessing information sufficient to constitute probable cause to search, may stop and search a moving vehicle without being required to obtain a search warrant. This exception to the warrant requirement, emphatically reaffirmed by the Supreme Court only a few months ago, has been justified historically because motor vehicles, which are so easily moved, may readily be hidden or removed from the jurisdiction in which a searching officer has authority before any warrant can be obtained.[3]

The search here furnishes a particularly apt illustration of the reasons why no warrant is required under such circumstances. The northern panhandle of West Virginia is a strip of land some ten miles wide. A vehicle spotted in that area could be driven to Ohio or Pennsylvania in a matter of minutes. Even if it remained in West Virginia, unless arrested, it could be hidden easily, particularly at night. A warrant requirement in such circumstances would effectively preclude most vehicle searches except those incident to arrests. If Trooper Garrett had probable cause to search the truck, therefore, his search was lawful, and Gomori's consent, or lack of consent, is irrelevant.

1. According to Trooper Garrett, the memorandum had been issued about a month earlier. It warned that rental trucks were being used in the area to transport stolen goods and instructed officers to stop rental trucks and trailers, to check their designation of cargo and, if given permission, to look inside. They were further instructed to learn the driver's name, place of origin and destination.

2. Chambers v. Maroney, 399 U.S. 42, 52. 90 S.Ct. 1975, 1982, 26 L.Ed.2d 419.

3. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879.

In urging that the officer lacked probable cause, Gomori confuses the question of probable cause to arrest with that of probable cause to search. They are not necessarily identical.

> "The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." [4]

While Trooper Garrett did not have knowledge of the commission of a specific crime with which he could connect Gomori, this does not answer the question whether he had reasonable cause to believe "that the contents of the [truck] offend against the law."

In evaluating the circumstances surrounding the search, we conclude that he did have probable cause to justify the search. As a necessary background to the encounter, there is the departmental memorandum which evidences the knowledge of the state police, and specifically of Trooper Garrett, who acted on the basis of it, that wide use was being made in the area of rental trucks as vehicles for transporting stolen goods. While this does not furnish probable cause to search every rental truck, it necessarily sheds light on what followed. Had Gomori's conduct, when stopped for a routine check, been consistent with innocence there would have been no occasion for a search, and from the record it appears that no search would have been conducted. However Trooper Garrett, who knew from the rental agreement that the truck was supposed to be carrying a load of furniture and knew from the appearance of the truck that it was indeed carrying a load of some sort, was alerted by Gomori's lie, obvious under the circumstances, in saying that the truck was empty. When an officer, on stopping a truck under circumstances which are consistent with innocence but at the same time are similar to those in which previous crimes have been committed, is told by the driver of the obviously loaded vehicle that it is empty, he has, we think, probable cause to believe that the attempted concealment is prompted by the fact that stolen or contraband goods are included in the cargo. Had Gomori told the trooper he was carrying a load of furniture, as his papers showed, no search would have been warranted, but Gomori's obvious lie gave the trooper ample reason to believe that unlawful cargo prompted the obvious attempts of concealment.

The lawfulness of the search was not dependent upon the trooper's having probable cause to believe the cargo consisted of stolen cigarettes. It is enough that he had probable cause to believe that the truck was carrying stolen goods of some sort or contraband.

Counsel for the Government sought to sustain the search solely on the basis of a consent, which seems to us to have been clearly involuntary. He did not contend that a warrantless search of a truck was lawful if probable cause was present, and inquiries from the bench revealed his unfamiliarity with the *Carroll-Brinegar* doctrine. There may have been a general impression of that doctrine's erosion, until, shortly after the argument of this case, its reaffirmation in *Chambers*. Indeed in the *Chambers* case, the lower courts had sustained the search as one incident to a lawful arrest without reference to the *Carroll-Brinegar* doctrine. Thus, this case is in the same posture here as was *Chambers* in the Supreme Court.

If counsel's failure to argue the validity of the warrantless search of the truck on the basis of probable cause within the meaning of *Carroll* and *Brinegar* and his statement of his belief that the validity of the search was dependent upon the finding of consent be regarded as a "concession," it was one of law and not of historic fact. Erroneous concessions of law have not before been thought to

---

4. Carroll v. United States, 267 U.S. 132, 158–159, 45 S.Ct. 280, 287, 69 L.Ed. 543, quoted in Chambers v. Maroney, *supra*, 399 U.S. at 49, 90 S.Ct. 1975.

bind us to the lawyer's error. If the lawyers' research has been shoddy or the law is in a state of flux, the lawyers' view of the governing principles may differ markedly from the court's, but the court should announce its own view of what it regards as the relevant principles not the misapprehensions of the lawyers. Random examples of cases in the latter category are Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 where no lawyer of record had urged the court to adopt the rule it did; Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, where counsel specifically disclaimed any intention to ask for reconsideration of Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (see opinion of Harlan, J., 367 U.S. fn. 6 at 674, 81 S.Ct. at 1702); Martin v. Virginia, 4 Cir., 349 F.2d 781, in which the unavailability of habeas corpus was specifically conceded (see Sokol, Language and Litigation, 192–193); Atkins v. Schmutz Manufacturing Co., 4 Cir., 435 F.2d 527, in which federal law was held controlling despite the agreement of counsel that state law controlled.

Whether counsel's "concession" was the result of simple, but admitted, unfamiliarity with *Brinegar* or a conviction that its principle had lost its force, now, after its recent reaffirmation in *Chambers*, we are free to, indeed we have a duty to, apply the *Chambers-Carroll-Brinegar* doctrine in any appropriate factual situation that comes before us.

The remaining contentions are without merit. The evidence was sufficient to support the verdict, the closing argument unexceptionable, and the instructions correct.

Affirmed.

BOREMAN, Circuit Judge (dissenting):

Most respectfully I state my disagreement with the majority's conclusion that probable cause existed for the search of the van-type rental truck which the defendant was operating on the public highway.

It is true that there was evidence of the issuance of a Departmental Memorandum to state police officers, warning of the possibility that rental trucks were being used to transport stolen goods, instructing officers to stop rental trucks and trailers, to check designation of cargo, and, *if given permission,* to look inside.

The truck was being driven on the public highway in northern West Virginia toward the dividing line between the states of West Virginia and Pennsylvania. There was no evidence of any traffic violation. The papers exhibited to the police officer were found to be in order. The van-type body of the truck was closed. Several requests of the officer for permission "to look inside" were refused. The officer persisted, threatening to get a search warrant, and the defendant said, in substance, "You've got the gun and the badge and I can't stop you from looking." From this the Government argues that the defendant voluntarily consented to the search.

I have no quarrel with the majority's statement that it has long been held "that an officer possessing information sufficient to constitute probable cause to search, may stop and search a moving vehicle without being required to obtain a search warrant." It is essential, however, that the information be sufficient to constitute probable cause and if it does nothing more than arouse suspicion the search based thereon is without legal justification.

Nor do I have any disagreement with the proposition that a movable vehicle is more readily subject to search without a warrant than a building or other fixed and immovable object. The cases cited by the majority, Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L. Ed.2d 419 (1970); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); and Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), fully support that proposition; but, while *Chambers* dispels any doubt which may have arisen as to the continuing viability of *Carroll*

and *Brinegar*, it is quite clear that the court in *Chambers* did not eliminate or water down the requirement of probable cause merely because the object of the search is a vehicle. I cannot read these cases, or any others with which I am familiar, as permitting a warrantless search of anything, including vehicles, without probable cause.

The arresting officer was not investigating any crime in the area of his patrol. He had no information that a burglary had occurred in Pennsylvania in which a large quantity of unstamped cigarettes had been stolen. He recalled a bulletin from headquarters which had been issued one or two months earlier concerning rental trucks.

After the search, the defendant was first taken before a Justice of the Peace in West Virginia where an arrest warrant and a warrant for a search of the truck [1] were obtained and he was charged with a violation of a West Virginia statute pertaining to possession of unstamped cigarettes. A hearing was held before the Justice of the Peace and a continued hearing was held several days later. In the interim, on the complaint of a special agent of the FBI, the defendant was given a hearing on January 12, 1967, before a United States Commissioner on the federal charge which formed the basis of this prosecution and another hearing before the Commissioner on February 8, 1967. The arresting officer testified at these hearings but for the very first time the officer testified, at the Commissioner's hearing on February 8, that the truck was sitting on its "overload springs." At these same hearings the officer testified repeatedly that he "arrested" the defendant only on suspicion while, confusingly and inexplicably, at trial he testified that he did not "arrest" the defendant at the scene of the search even though there was evidence to show that the defendant had been handcuffed before the officer entered the van to examine its contents. The officer repeated his testimony that his search of the truck was based on suspicion.

The majority refers in equivocal terms to government counsel's "concession," but there is no room for equivocation. My recollection has been refreshed upon listening to the tape recording of oral arguments of counsel. Government counsel frankly conceded that the search of the truck was without probable cause and that the search was illegal unless the defendant voluntarily consented thereto.

Clearly, as the majority states, no consent to the search was voluntarily given. My difficulty is in finding the requisite probable cause for the search and it is obvious that government counsel had the same difficulty.

The evidence as to instructions to patrolling police officers with reference to stopping rental trucks was somewhat vague as to the time when the instructions were issued but it is clear that only *if given permission* were the officers instructed to look inside the stopped rental trucks and trailers.

The officer persisted in his requests for permission to look inside but permission was repeatedly refused. *After* the search the officer obtained from a justice of the peace a warrant for the arrest of the defendant and a warrant for the search of the truck, but the arrest and search were then past history. In fact, the defendant was in handcuffs before the search and yet the officer testified that he made no arrest at the scene of the search. He testified at preliminary hearings that he arrested defendant *on suspicion*. Four preliminary hearings were held, two on state charges and two on federal charges, but it was not until the fourth hearing that the officer happened to remember the "overload springs" bit.

Government counsel may have been embarrassed by finding himself in the position of having to rely upon such testimony to establish probable cause for the

---

1. A second search pursuant to a warrant would not legalize the search which had already been made without probable cause.

warrantless search. It is to his credit that he was reluctant to do so and he made the concession that the search could be sustained only on the basis of voluntary consent.

I cannot disregard or "sweep under the rug" this concession which, to me, is highly significant in the circumstances. In innumerable instances within my recollection we have not hesitated to act upon a defendant's damaging concession against his own interest, whether in brief or oral argument, and a defendant is no less entitled to benefit from the Government's open and unequivocal disclaimer of continued reliance upon a vital point. I would reverse.