William Raymond SMITH, Appellee,

v.

A. E. SLAYTON, Jr., Superintendent of the Virginia State Penitentiary, Appellant.

No. 72–1847.

United States Court of Appeals, Fourth Circuit.

Argued July 16, 1973.

Decided Sept. 25, 1973.

---

William A. Carter, III, Asst. Atty. Gen. (Andrew P. Miller, Atty. Gen. of Virginia, on brief), for appellant.

Barry Nakell, Chapel Hill, N.C., [court-appointed counsel] for appellee.

Before CRAVEN, BUTZNER, and RUSSELL, Circuit Judges.

BUTZNER, Circuit Judge:

This appeal questions whether the admission into evidence of a bloodstained seat cover, taken from William Raymond Smith's automobile without a search warrant, violated his rights under the fourth and fourteenth amendments. The district court, relying on Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), held the evidence was unlawfully seized. We reverse.

On August 27, 1964, James Wooten was playing in the street with his sister, Irene Wooten, and his half-brother, Columbus Taylor, in Norfolk, Virginia. A man drove up, asked directions to a nearby street, and requested James Wooten to accompany him in order to point out the street. On September 1, James Wooten's body was found on a trash dump. He had been sexually molested and killed.

A police officer investigating the case talked to Smith on September 21 concerning the crime. When asked if he killed James Wooten, Smith responded, "I may have, I don't remember." Smith then explained that he had been sexually disturbed for 30 years, that his marital life was very unsatisfactory, and that he did not wish to be in the presence of little boys and girls for fear of what he might do.

Irene Wooten and Columbus Taylor both said that the abductor was driving a green station wagon. During the investigation, when questioned as to his automobile, Smith replied that he had owned a 1953 Pontiac sedan in late August, but that he sold it and was now buying a black Plymouth station wagon which he was unable to obtain until he paid the balance due. The police learned that Smith's Pontiac was formerly painted green, that it had been brush painted black before Smith sold it, and that a seat cover had been removed from it. The car dealer, who traded vehicles with Smith, told the police that Smith had obtained the Plymouth on September 11. This was about two weeks after the abduction and, contrary to Smith's statement, indicated that he had possession of the Plymouth at the time the police questioned him.

On September 22, Smith voluntarily went to police headquarters. He was placed in a lineup where Irene Wooten identified him by sight and Columbus Taylor by voice. Smith was then arrested and taken into custody. The next day a police officer observed Smith's Plymouth station wagon in a public parking lot across the street from the police station and notified the detective investigating the crime of his find. The detective looked through the car's window and saw a stained seat cover in plain view on the front seat. Suspecting the stains were blood, the detective removed the seat cover from the unlocked car and delivered it to a crime laboratory. The seat cover was subsequently admitted into evidence at Smith's trial. A toxicologist testified that the stains were human blood, but he could not determine whether the blood was the same type as James Wooten's.

After an evidentiary hearing, the district court initially denied relief, but this court vacated the judgment and remanded the case for further proceedings because of Smith's absence from the hearing.[1] In the meantime, the Su-

---

1. Smith v. Cox, Mem.Dec. 71–1173 (4th Cir. 1971). We previously had required an evidentiary hearing. Smith v. Peyton, 413 F.2d 760 (4th Cir. 1969).

preme Court decided Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), which excluded from evidence vacuum sweepings that the police obtained without a valid search warrant from a car parked in the yard of a murder suspect. The district court, deeming *Coolidge* controlling, granted Smith a writ of habeas corpus subject to retrial at which the seat cover and the toxicologist's testimony would be excluded from evidence.

A recent opinion of the Supreme Court, not available to the district judge, persuades us that the principles stated in *Coolidge* should not be applied to Smith's factually dissimilar case. In Cady v. Dombrowski, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973), the Court explained the reason for partially excepting automobiles from the general rule that searches must be authorized by valid warrants:

> "Although the original justification advanced for treating automobiles differently from houses, insofar as warrantless searches of automobiles by federal officers was concerned, was the vagrant and mobile nature of the former . . . warrantless searches of vehicles by state officers have been sustained in cases in which the possibilities of the vehicle being removed or evidence in it destroyed were remote, if not nonexistent . . . The constitutional difference between searches of and seizures from houses and similar structures and from vehicles stems both from the ambulatory character of the latter as well as from the fact that the extensive, and often noncriminal contact with automobiles that will bring local officials in 'plain view' of evidence, fruits, or instrumentalities of a crime, or contraband. . . ."

The Court's explanation illustrates why the seizure of the seat cover was lawful. Here it was precisely the police's extensive public contact with automobiles, not a search of Smith's private property, that directly led to the evidence. The patrolman who initially observed Smith's car and the detective who obtained a plain view of the bloodstained seat cover were in a public parking lot where they had a right to be without any warrant. Under these circumstances the seizure was lawful. Referring to the seizure of evidence from an automobile, the Supreme Court has said: "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced into evidence." Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968).

In *Coolidge*, Mr. Justice Stewart, writing in Part IIC for a plurality of the Court, emphasized that the plain view doctrine will not support the warrantless seizure of evidence if the officer lacked prior justification for the intrusion that leads to the view. Here, the justification lay in the fact that the officer was in a public place, where, along with any other member of the public, he could lawfully look into Smith's car while it was parked in a public lot and see the seat cover. He did not illegally intrude on Smith's property to obtain the view of the evidence that was subsequently admitted at Smith's trial. Smith's exposure of this evidence to the plain view of the public indicates such a lack of expectation of privacy that its seizure was inoffensive. *See*, Katz v. United States, 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed. 2d 576 (1967) (Mr. Justice Harlan concurring).

Also, in *Coolidge,* the police knew that the accused car was an instrument of the crime. They knew of its presence at his home and they planned all along to seize it. Under these circumstances, a majority of the Court held, in Part IID, that the police had no justification for failing to secure a warrant. Here, in contrast, the police were aware that Smith had not used the Plymouth to abduct the boy. Consequently—unlike the police in *Coolidge*—they had no design to seize the vehicle as an instrument of the crime. Not until the detective looked into the car, did he inadver-

tently find a seat cover which he recognized might well be evidence of the crime. Under these circumstances, the exposed situation of the car was an exigency justifying the immediate seizure of the evidence. *See,* United States v. Cohn, 472 F.2d 290 (9th Cir. 1973).

We hold, therefore, that a police officer may lawfully seize from a car parked in a public place an object in plain view that he has probable cause to believe is evidence of crime. The public location of the car, the plain view of the evidence, and the officer's probable cause to act coalesce to establish that the seizure is not proscribed by the fourth amendment as unreasonable.

Reversed.