**UNITED STATES of America,
Appellee,**

v.

**William Garland BRADSHAW,
Appellant.**

**No. 73–1803.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 1, 1973.

Decided Jan. 9, 1974.

---

Larry W. Pitts, Newton, N. C. (Stanley J. Corne, Corne, Warlick & Pitts, Newton, N. C., on brief), for appellant.

Michael S. Scofield, Asst. U. S. Atty. (Keith S. Snyder, U. S. Atty., on brief), for appellee.

Before BOREMAN, Senior Circuit Judge, and WINTER and WIDENER, Circuit Judges.

WINTER, Circuit Judge:

Defendant appeals from his conviction upon a jury verdict that he possessed non-tax-paid whiskey in violation of 26 U.S.C. §§ 5205(a), 5604(a). The only question raised by this appeal is the admissibility, at defendant's trial, of certain jugs of moonshine whiskey, together with testimony concerning their discovery, found in a truck parked on defendant's property near his residence by Agent Williams of the Alcohol, Tobacco and Firearms Division of the United States Treasury Department. On the basis of Agent Williams' testimony concerning events leading up to this warrantless discovery and seizure, the trial

judge overruled defendant's objection to admissibility based on the fourth amendment. The government contends that the circumstances of Agent Williams' discovery and seizure fell within either or both of two recognized exceptions to the prohibition against warrantless searches—"seizure of evidence within plain view" or "automobile search." We disagree, and we reverse the judgment and grant a new trial, if the government be advised.

I.

On November 16, 1972, at approximately 1:30 p. m., Agent Williams and a state enforcement officer were taken to the vicinity of defendant's residence by a second state enforcement officer who then drove off. Agent Williams and his companion nevertheless remained in radio contact with the other officer in the vehicle. Defendant had a reputation, known to Agent Williams, of being a moonshiner, and the purpose of the visit was to search the fields adjacent to defendant's property for a still. The only access to defendant's residence was an old road about a quarter mile in length that came to an end in his front yard. During their search of the adjacent fields, the officers observed three vehicles parked near defendant's residence, including the one from which the liquor was later seized. A fourth vehicle was seen by the side of the access road, beyond the limits of defendant's property and apparently abandoned.

Upon approaching the fourth vehicle, the officers detected the aroma of moonshine whiskey emanating therefrom. When their search for a still proved futile, the officers decided to leave in order to prepare for a stake-out of the abandoned vehicle. Agent Williams summoned the officer in the vehicle by radio to pick them up at a certain spot. As they were walking to the pickup point, the defendant drove by them in his pickup truck proceeding in the direction of his house. The officers made an unsuccessful effort to conceal themselves. Agent Williams, who had known defendant for fifteen or sixteen years, was certain that defendant had recognized him. Defendant parked his vehicle near his residence and left, but the officers were unable to determine whether he entered the house or took to the nearby fields.

As a result of this encounter, the officers decided they could not leave the scene without a substantial risk that defendant, alerted to their presence, might remove any contraband or evidence that might be contained in the abandoned car. After the third officer arrived in his car, they decided to go up to defendant's house, summon him to the door and ask him what connection, if any, he had with the abandoned car as a preliminary to searching it. Agent Williams and the others then drove to defendant's residence.

Agent Williams' attempts to summon defendant to the front door were interrupted by the arrival of two men in a truck carrying bran—a usual ingredient in the manufacture of moonshine whiskey. After a short discussion with the officers, the two men drove off and Agent Williams resumed knocking at the front door, calling defendant by name.

Failing to obtain a response, Agent Williams decided to try the back door. En route to the rear of the house, he passed a 1952 Ford truck parked near the building. It was approximately a ton and a half in size with sideboards and swinging doors in the rear which were closed. This meant that whatever may have been resting on the bed of the truck could not have been detected by the casual glance of a passer-by. When Williams got near this truck, he noticed that it exuded a strong odor of moonshine whiskey. Agent Williams' ability to identify the odor of moonshine whiskey is not in dispute.

Agent Williams then "stopped at the rear of the truck" and "looked through a kind of crack in the back swinging doors"—this crack was a space between the edges of the doors which did not fit

together snugly when closed. Through this crack Agent Williams observed a large quantity of one gallon plastic jugs containing a white liquid. He then entered the truck, ascertained that the jugs contained moonshine liquor and seized them. He, of course, did not have a warrant for the search or the seizure.

## II.

It is commonplace learning that warrantless searches and seizures are unreasonable within the meaning of the fourth amendment unless they fit within certain carefully defined classes of cases. Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); Camara v. Municipal Court, 387 U.S. 523, 528–529, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). And so we turn to the "plain view" exception to the prohibition against warrantless searches urged on us by the government.

The most recent exposition by the Supreme Court of the "plain view" exception can be found in the plurality opinion in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). There, two prerequisites to the availability of the exception were prescribed.

■ First, the officer's presence at the vantage point from which he discovers the evidence in plain view must not amount to an unjustifiable intrusion into an area with respect to which defendant's expectations of privacy are protected by the fourth amendment. That is, the officer must not have entered defendant's zone of privacy, or, if he has, such entry must have been justified by "a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused." 403 U.S. at 466,

91 S.Ct. at 2038. Secondly, the discovery of the evidence in plain view must have been inadvertent.

The rationale underlying this exception is that the abuses which the fourth amendment warrant requirement is designed to prevent are satisfactorily dealt with by the requirement that the original intrusion be constitutionally justifiable. In consequence, it would be needlessly inconvenient, and sometimes perhaps a danger to the police or to the evidence, to require the police to ignore evidence in plain view until they have obtained a warrant particularly describing it. 403 U.S. at 467–468, 91 S.Ct. 2022.

Turning now to the application of these principles to the facts of the instant appeal, we conclude that the agents entered an area with respect to which the defendant had a reasonable expectation of privacy protected by the fourth amendment when they came onto his premises. However, the agents had a legitimate reason for this incursion unconnected with a search of such premises directed against the accused. They were clearly entitled to go onto defendant's premises in order to question him concerning the abandoned vehicle near his property.[1] Furthermore, we cannot say that Agent Williams exceeded the scope of his legitimate purpose for being there by walking around to the back door when he was unable to get an answer at the front door.

It follows that Agent Williams got within smelling range of the truck in which the liquor was found without unjustifiably intruding into defendant's fourth amendment zone of privacy. Had he "discovered" the liquor at this point, the plain view doctrine would be applicable to its seizure. However, Agent Williams did not "discover" the liquor until he actually saw it through the crack be-

---

1. Defendant's attorney, in the course of cross-examination of Agent Williams and Officer Devinney, advanced the contention that the actual purpose of the intrusion was a search of the truck in which the liquor was found. In admitting the evidence derived from the search, the district court impliedly found that the agents' purpose in going onto defendant's property was, in fact, what their testimony showed it to be, i. e. to interrogate defendant about the abandoned vehicle. We cannot say that this finding was clearly erroneous.

tween the rear doors of the truck. The liquor was certainly not in "plain view," within the ordinary meaning of that phrase, when Agent Williams first detected the odor emanating from the truck. Nor did he, at that point, have any basis upon which to conclude, with certainty, that liquor was actually present in the truck. An alternative explanation of the smell was equally probable—that liquor had once been present in the truck but had since been removed leaving the truck permeated with its vapors. Agent Williams thus had no more than a reasonable ground to infer the presence of liquor at this point. A further visual observation was necessary to confirm the hypothesis.

■ It was not possible for Agent Williams to make this confirmatory observation without exceeding the original purpose of his intrusion, which had justified his presence on defendant's property up to that point, and making a further intrusion into an area of protected privacy. Objects lying on the bed of the truck could not be seen except by someone who took special pains to look through the crack. The truck was parked on defendant's property very near to his residence. Under such circumstances, the defendant had a reasonable expectation that the contents of his truck would remain unknown to the general public.[2] Thus, we believe that when Agent Williams looked through the crack between the closed rear doors of the truck, he "searched" the truck within the meaning of the fourth amendment.

■ We hold that where, in the course of an initially justifiable intrusion, an officer discovers facts which give him reason to believe that evidence of crime will be found by a further intrusion beyond the scope of the original intrusion, the "plain view" doctrine is inapplicable unless there is independent justification for such further intrusion.[3] Since it was a search directed against the defendant, we must examine whether the "automobile search" doctrine validates Agent Williams' further intrusion of looking through the crack between the doors of the truck.

### III.

■ It is established that under certain circumstances, an officer, having probable cause to believe that an automobile contains evidence of the commission of a crime, may search that automobile for such evidence without first obtaining a warrant. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L. Ed. 543 (1925); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Gomori v. United States, 437 F.2d 312 (4 Cir. 1971). We have no doubt that, at the point at which Agent Williams smelled the distinctive odor of moonshine whiskey emanating from the truck, he had probable cause to believe that the truck contained contraband. Taken together with defendant's known

2. *Compare*, Smith v. Slayton, 484 F.2d 1188 (4 Cir. 1973) (Evidence on front seat of auto parked on public street).

3. Although we are also convinced that Agent Williams' ultimate discovery of the liquor was not "inadvertent" as required by the plurality opinion in *Coolidge*, the need for showing inadvertence, in addition to justifiable intrusion into defendant's expectations of privacy, is not beyond dispute. It is clear from the separate opinions in *Coolidge* that three members of the present Court (Burger, C. J., White, J., and Blackmun, J.) disagree with the requirement that the discovery be inadvertent. These, together with the two new members (Rehnquist, J., and Powell, J.) could make a majority against the "inadvertence" requirement. This circumstance has led to a split of authority in the lower courts over the continued viability of the "inadvertence" requirement. *Compare*, Martinez v. Turner, 461 F.2d 261, 264–265 (10 Cir. 1972) (applying the requirement) with North v. Superior Court, 8 Cal.3d 30, 104 Cal.Rptr. 833, 502 P.2d 1305 (1972) (rejecting it).

In view of the uncertain status of the "inadvertence" requirement, we rest our decision on the ground that Agent Williams did not discover the evidence until his intrusion had exceeded the bounds of his original justification for being present. All the justices in *Coolidge* agreed that the original intrusion has to be justifiable if the plain view exception is to apply.

reputation as a moonshiner and the presence at the scene, moments earlier, of two individuals in a vehicle carrying one of the raw materials of a distilling operation, Agent Williams' detection of the odor of moonshine amounted to probable cause for the belief that moonshine was to be found in the truck.

But here again, the lack of a clear majority in *Coolidge* makes difficult a decision as to the exact scope of the doctrine that a warrantless search of an automobile may be made upon probable cause. In Coolidge v. New Hampshire, supra, a plurality of the Supreme Court found the *Chambers/Carroll* doctrine inapplicable to a certain seizure of an automobile because

> . . . there is nothing in this case to invoke the meaning and purpose of the rule of Carroll v. United States— no alerted criminal bent on flight, no fleeting opportunity on an open highway after a hazardous chase, no contraband or stolen goods or weapons, no confederates waiting to move the evidence, not even the inconvenience of a special police detail to guard the immobilized automobile. In short, by no possible stretch of the legal imagination can this be made into a case where "it is not practicable to secure a warrant." 403 U.S. at 462, 91 S.Ct. at 2035.

Elsewhere the plurality explained that the automobile exception was a specific instance of the doctrine of "exigent circumstances" justifying a warrantless search:

> As we said in Chambers . . . "exigent circumstances" justify the warrantless search of "an automobile *stopped on the highway*," where there is probable cause, because the car is "movable, the occupants are alerted, and the car's contents may never be

found again if a warrant must be obtained." "[T]he opportunity to search is fleeting . . ." 403 U.S. at 460, 91 S.Ct. at 2035 (emphasis supplied by the *Coolidge* plurality.)

If we could accept as fully authoritative the plurality opinion in *Coolidge*, reversal clearly would be required. Of the specific factors tending to justify a warrantless search of an automobile enumerated by the plurality, only two are present here—the object of the search was contraband and the guarding of the truck by two of the officers while the third went to obtain a warrant would have involved some inconvenience. But, absent entirely from this situation are any of the facts indicating risk of loss of evidence. We doubt that the plurality in *Coolidge* regarded the two factors present here alone as determinative. In the first place, the inconvenience of standing guard over a vehicle while another officer obtains a warrant is likely to be present in most automobile searches.[4] It is unlikely that the plurality thought that they were authorizing warrantless searches in such a large proportion of possible cases, particularly since it is clear that their conception of the rationale underlying the exception is based on the risk of loss of evidence. Secondly, we do not believe that the plurality intended to place determinative significance upon the distinction between "contraband" and "mere evidence" that had been categorically rejected in Warden v. Hayden, 387 U.S. 294, 87 S. Ct. 1642, 18 L.Ed.2d 782 (1967).[5]

There is, however, substantial doubt concerning whether the *Coolidge* plurality's apparent view that the "automobile exception" is limited to circumstances where the obtaining of a warrant would risk loss of evidence is any longer a correct statement of the law. In applying *Coolidge*, courts other than the Supreme

---

4. The only reason why this factor was not present in *Coolidge* was that the police decided to keep the vehicle under surveillance for a substantial period of time after they had obtained probable cause to seize it before taking any action.

5. *But, see*, United States v. Menke, 468 F.2d 20 (3 Cir. 1972) for the contrary view concerning the importance of the fact that contraband is the object of the automobile search.

Court have sustained warrantless searches of automobiles under circumstances where the only factor that could possibly have militated against imposition of the warrant required is the inconvenience of posting a guard over the vehicle while someone is sent to obtain a warrant. People v. Bukoski, 41 Mich. App. 498, 200 N.W.2d 373 (1972); People v. Dumas, 9 Cal.3d 871, 109 Cal.Rptr. 304, 512 P.2d 1208 (1973); United States v. Bozada, 473 F.2d 389 (8 Cir. 1973); United States v. Connolly, 479 F.2d 930 (9 Cir. 1973).[6] The *Connally* case flatly holds that the inconvenience of posting a guard is an "exigent circumstance" that justifies dispensing with the warrant requirement. The *Dumas* case explains its result in terms of the less intense expectation of privacy that attaches to automobiles when compared with personal residences. Such reduced expectation of privacy justifies dispensing with the warrant requirement when there is probable cause.

Furthermore, the Supreme Court has recently stated that, in addition to the risk of loss of evidence, the extensive and often non-criminal contact with automobiles that *state* enforcement officials have in the course of the performance of their duties justifies treating automobiles differently from houses for purposes of the warrant requirement. Cady v. Dombrowski, 413 U.S. at 439, 93 S.Ct. at 2527. Although this new element in the rationale for the "automobile exception" would not, on its face, appear to apply to searches for evidence of a federal crime conducted by federal officers, the decision in Cady v. Dombrowski suggests that the rationale for the exception is somewhat in a state of flux.

Prior to the dissents in *Coolidge* and the decision in *Cady*, the scope of the automobile exception seemed to be carefully defined to require the presence of circumstances indicating the risk of loss of evidence. Certainly, that is the only fair reading of the *Carroll-Chambers-Coolidge* line of cases. We are not persuaded that this line of cases has been abandoned or overruled. Therefore, we are constrained to conclude that this search was invalid.[7] We are particularly persuaded where, as here, the vehicle is parked on defendant's property, a circumstance, we believe, which enhances the defendant's expectation of privacy with respect to its contents.

To summarize, we hold that, since two of the agents could have guarded the

---

6. It could be argued that our own decision in Smith v. Slayton, supra, note 2, also falls into this category of cases. Judge Butzner in writing for the court, cited the exposure of evidence on the front seat of a car parked across the street from a police station as an exigent circumstance justifying immediate seizure. His opinion does not disclose whether more than one officer was present so that a guard could be posted while a warrant was obtained, although presumably other police were available from the police station across the street. But the principal basis of the decision was that the plain view doctrine applied, because the blood stained seat cover was clearly visible to one who had a right to be on a public parking lot.

7. We disclaim any intention of overruling United States v. Gills, 357 F.2d 299 (4 Cir. 1965), and we do not think, despite the dissent's contrary suggestion, that we achieve that effect *sub silentio*. The only issue decided in *Gills* was whether there was *probable cause* to search defendant's car which had been stopped on the highway. We held that there was probable cause to search when the odor of moonshine whiskey was detected, defendant employed deceptive means to prevent access to the trunk of the vehicle and defendant attempted to flee under extremely adverse conditions to avoid the search. We did *not* consider the separate issue of a warrantless search. Moreover, the search was conducted *after* defendant was arrested, and the vehicle searched was under his control at the outset of the encounter, so that, as a case decided prior to Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), a warrantless search might have been sustainable as a search incident to a lawful arrest. Indeed, several of the authorities cited in *Gills* are "incidental search" cases. 357 F.2d at 302. If the continuing vitality of *Gills* has been impaired, the impairment stems from *Chimel*, and not from what is decided today.

truck smelling of moonshine whiskey while the third obtained a warrant without significant risk of loss of evidence, the search and seizure in this case violated the fourth amendment and that the fruits thereof should have been suppressed.

For these reasons, we reverse the judgment of conviction against defendant. On the present record, there is lacking evidence legally sufficient to convict defendant if the search, the seizure and testimony with respect to them are excluded. We do not know, however, whether the government has available other evidence of guilt not sought to be used at this trial. In reversing, we therefore grant the government the right to try defendant anew, if it be so advised.

Reversed: new trial granted.

WIDENER, Circuit Judge (dissenting):

I respectfully dissent and would affirm the conviction on the ground that the evidence was lawfully seized under the plain view exception, or as phrased in this circuit without mentioning plain view, "probable cause for the search complained of." *Gills*, infra, 357 F.2d p. 303.

The majority finds that:

(1) ". . . the agents had a legitimate reason for this incursion [of the curtilage] unconnected with a search of such premises directed against the accused." P. 1100.

(2) "They were clearly entitled to go onto defendant's premises in order to question him concerning the abandoned vehicle near his property." P. 1100.

(3) "Furthermore, we cannot say that Agent Williams exceeded the scope of his legitimate purpose for being there by walking around to the back door when he was unable to get an answer at the front door." P. 1100.

(4) "It follows that Agent Williams got within smelling range of the truck . . . without unjustifiably intruding into defendant's fourth amendment zone of privacy." P. 1100.

(5) "Agent Williams' attempts to summon defendant to the front door were interrupted by the arrival of two men in a truck carrying bran—a usual ingredient in the manufacture of moonshine whiskey." P. 1099.

As noted in the opinion of the court, moonshine whiskey has a distinctive odor, and, contrary to the majority, I am of opinion that the agent "discovered" (see pp. 1100–1101) the moonshine when he smelled the odor coming from the truck and, looking through the crack in the door, saw it without disturbing the door of the vehicle. Under the "totality of facts and circumstances" existing here, *Gills*, 357 F.2d, p. 302, the ensuing search to me was not the unreasonable search prohibited by the Fourth Amendment.

We have upheld a search under facts no more favorable to the government in United States v. Gills, 357 F.2d 299 (4th Cir. 1965), cert. den., 384 U.S. 933, 86 S.Ct. 1448, 16 L.Ed.2d 532 (1966), a case mentioned only by footnote by the majority, which I suggest the opinion of the court here overrules.

Although the majority opinion states the holding in *Gills* did "*not* consider the separate issue of a warrantless search," I find it difficult to grasp how the question arose on appeal, separately or otherwise, "under the Fourth Amendment" as stated at p. 301, *Gills*, unless the objection in the trial court to the admissibility of the evidence was that the search had been made without a warrant. *Gills* precisely held that the search was justified because the totality of facts and circumstances created "probable cause for the search complained of," *Gills*, p. 303. The majority opinion, then, de-

spite its holding at p. 1101, that the agent ". . . had probable cause to believe that the truck contained contraband" and ". . . probable cause for the belief that moonshine was to be found in the truck," necessarily holds that something in addition to probable cause is required for the search of a motor vehicle without a warrant. In my opinion, this case ought to come within the rule expressed in United States v. Haley, 321 F.2d 956, 958 (6th Cir. 1963):

"If, on the other hand, the search occurred before the arrest, it came within the rule that a search without a warrant of an automobile engaged in the illegal transportation of intoxicating liquor, made upon probable cause, is not prohibited by the Fourth Amendment."

The *holding* of the majority is:

". . . we hold that, since two of the agents could have guarded. the truck smelling of moonshine whiskey while the third obtained a warrant without significant risk of loss of evidence, the search and seizure in this case violated the fourth amendment and that the fruits thereof should have been suppressed." (Pp. 1103–1104).

The majority, then, suggests that two of the agents should have stayed on the defendant's property, without a search warrant, and *guarded the truck*, obviously for the sole purpose of preventing the defendant from exercising dominion over it—a seizure in any context. In my opinion, this seizure of the whole truck, while awaiting the return of the third agent with the search warrant, would have been at least as unjustifiable as looking through the crack in the door, which has been disapproved. The Fourth Amendment protects against "unreasonable searches *and seizures*." Holding that the search by looking would be unlawful, when the *seizure* of the whole truck would not, is construing the Fourth Amendment with critical niceness to which I may not accede.