UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 97-4192

JAMES DARNELL BROWN, a/k/a James
David Brown,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
Frank W. Bullock, Jr., Chief District Judge.
(CR-96-44)

Submitted: September 30, 1997

Decided: November 5, 1997

Before ERVIN, WILKINS, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

John Stuart Bruce, Acting Federal Public Defender, William S. Tri-
vette, Assistant Federal Public Defender, Greensboro, North Carolina,
for Appellant. Walter C. Holton, Jr., United States Attorney, Timika
Shafeek, Assistant United States Attorney, Greensboro, North Caro-
lina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

James Darnell Brown appeals from his conviction for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g) (1994). We affirm.

Officer Sampson of the High Point, North Carolina, Police Department received a tip from a confidential informant that Brown would be at a particular location in High Point, driving a green Pathfinder, and carrying crack cocaine. Sampson went to the place identified by the informant and observed Brown in a green Pathfinder. A few days later Sampson received a similar tip but was unable to locate Brown. Sampson then posted a lookout for Brown's vehicle and it was found the next day at 806 Park Street, a private residence. Sampson traveled to 806 Park Street and observed the same green Pathfinder sitting in the yard of the residence a few feet from the public road. Sampson then took up a location a few blocks down the street and waited for Brown to leave in the Pathfinder. From his vantage point Sampson could not see the Pathfinder, but would be able to tell if it was leaving. After waiting approximately two hours, Sampson contacted his superior who suggested that Sampson approach the residence and seek permission to search the vehicle.

As Sampson passed the Pathfinder and approached the residence, he observed a group of people sitting on the front porch. He also noticed the smell of marijuana. Sampson asked Brown, who was on the porch, whether the Pathfinder belonged to him. Brown replied that it did. Sampson then asked if Brown's name was Spencer as the license plate was registered under that name. Brown responded in the negative, and identified himself as "James Brown." Sampson then asked Brown if he would walk with him down to the road for a discussion away from the group on the porch. Brown agreed and the two traced the same path Sampson had followed when approaching the residence.

2

Sampson identified himself, informed Brown that he had received complaints about Brown and the vehicle, and requested permission to search the Pathfinder. Brown refused, stating that Sampson would have to wait for his wife, or girlfriend to get off from work.**1** Following this refusal, Sampson walked with Brown back up to the porch, again following the same path. At this point, Sampson noticed that no one remained on the porch, but he still smelled the same odor of marijuana which he had before. Sampson then noticed that the odor appeared to be coming from the Pathfinder, specifically from the passenger's side window which was in the down position. Prompted by this odor, Sampson looked through the open window and saw a marijuana cigarette in the ashtray. Based upon this discovery, Sampson called Brown back out of the house, arrested him for simple possession of marijuana, and searched the Pathfinder. This search, which Sampson described as being incident to arrest, revealed a loaded firearm in the glove compartment and several bundles of heroin, crack, and marijuana hidden in a "stash compartment" of a book.

Sampson pled guilty in state court to various drug charges and was charged in federal court only for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g) (1994). Prior to trial Brown moved to suppress the firearm as the result of an illegal search. His attorney argued first that the search could not be justified under the plain view doctrine because Sampson was on private property when he observed the alleged cigarette. Even assuming that Sampson was entitled to be on the private property, Brown attacked Sampson's assertion regarding the burning marijuana cigarette. Specifically, Brown argued that Sampson's claim that the cigarette was still burning after his two-hour observation of the Pathfinder was simply beyond credulity. Alternatively, Brown argued that even assuming the existence of the cigarette, the search could not be justified as incident to arrest because the arrest was not pursuant to a highway stop, the car was located on private property, and Brown, on crutches and without the keys, was unable to obtain a weapon or destroy evidence. Nor, Brown asserted, could the search be justified pursuant to the automobile exception of the warrant requirement, again because Brown was on crutches and not in possession of the keys. Finally, Brown asserted that the vehicle was only a few blocks from the court-

_____

**1** This wife, or girlfriend, to whom Brown referred was Spencer.

house where Sampson could have, and should have, obtained a warrant.

The district court rejected these arguments, finding that Sampson had the authority to approach the porch on private property and question Brown. From this point the district court found that Sampson's observation of the marijuana[2] fell within the plain view doctrine and justified a further search based upon the automobile exception.

Immediately prior to trial Brown moved for dismissal, arguing that Brown's due process rights were violated by the police department's destruction of the firearm which formed the basis of the § 922(g) charge and the marijuana cigarette which formed the basis of the search. The district court denied this motion as well.

Following a jury trial, Brown was convicted of the § 922(g) offense. He noted a timely appeal to this Court and argues that the district court erred in denying both of the aforementioned motions. We affirm.

Addressing first Brown's motion to suppress, we note that Brown attacks the application of the plain view doctrine to the facts surrounding his case. Specifically, he contends that the seizure of the marijuana was improper under the plain view doctrine, and that had the police not seized the marijuana and then searched the Pathfinder, they would not have discovered the firearm. We disagree.

The plain view doctrine justifies seizure of evidence where the seizing officer is lawfully present at the place from which the evidence can be plainly viewed, the officer has a lawful right of access to the object itself, and the object's incriminating character is immediately apparent. See United States v. Taylor, 90 F.3d 903, 909 n.4 (4th Cir. 1996). Beginning with step one of the plain view doctrine analysis, we agree with the district court's finding that Officer Sampson's presence on the private property was lawful. We find Brown's reli-

_____

[2] Although the district court expressed some concern regarding the duration of the burning marijuana cigarette, it nonetheless stated that it was "inclined to believe" that the cigarette was readily identifiable by the officer as contraband.

ance on United States v. Bradshaw, 490 F.2d 1097 (4th Cir. 1974), for the proposition that Officer Sampson's presence on private property invalidated the search, unconvincing not only because Bradshaw did not hold that plain view cannot support a search when the police observe illegal materials on private property, but also because Bradshaw is factually distinguishable. In Bradshaw, this Court held that "moonshine" hidden in a truck on the back of the defendant's property which could only be observed by walking to the back of said property and looking through a small crack in the rear doors of the trunk, was not in plain view from a location in which a police officer might be lawfully present. In Brown's case, however, Officer Sampson was able to observe the marijuana through an open window and therefore his act of looking into the Pathfinder did not violate any privacy interest Brown might have in the contents of the vehicle. While it is true that the vehicle was on private property, we agree with the district court that Officer Sampson had the right to approach the house from the road and question Brown regarding the information he had received. Thus, we agree with the district court's finding that Officer Sampson observed the marijuana in plain view from a location where he had a right to be.

Based upon this observation we find that steps two and three of the plain view doctrine were also satisfied. The illegality of the marijuana was immediately apparent and its presence, contrary to Brown's assertions, gave Officer Sampson probable cause to search the Pathfinder under the automobile exception to the warrant requirement. Once legally in the car under the automobile exception, the police had the authority to search within the glove compartment, and the discovery of the firearm was thus valid under both the plain view doctrine and automobile exception. We therefore affirm the district court's denial of Brown's motion to suppress on this basis.

Next, Brown argues that the district court erred in denying his motion to dismiss on the basis that the Government destroyed potentially exculpatory evidence when it destroyed the firearm forming the basis of the § 922(g) charge and the marijuana justifying the search. Brown argues that fingerprint analysis of the firearm might have revealed the prints of another individual, demonstrating that the firearm was not in Brown's possession, but was in the possession of another. In Arizona v. Youngblood, 488 U.S. 51 (1988), the Supreme

5

Court held that to establish a due process violation for failure to preserve such evidence a defendant must show: (1) that the evidence possessed exculpatory value which was apparent prior to its destruction; (2) that the defendant cannot obtain comparable evidence by another means; and (3) bad faith in the destruction of the evidence. See Youngblood, 488 U.S. at 57-58 (adding third element); California v. Trombetta, 467 U.S. 479, 489 (1984) (establishing first two elements). The presence or absence of this bad faith turns upon the police knowledge of the exculpatory nature of the evidence at the time it was destroyed. See Youngblood, 488 U.S. at 56. In Brown's case, the exculpatory nature of the firearm was not readily apparent. Despite Brown's claim that fingerprint evidence might have revealed that his prints were not on the firearm, an ATF agent testified that the firearm was not submitted for fingerprint testing because "it had been through several hands" which would result in"overlays, where . . . one fingerprint overlay[s] over the other . . . mak[ing] the possibility of obtaining fingerprints . . . minimal." Given the absence of this testing, the firearm possessed no readily apparent exculpatory value and the district court therefore committed no error in denying Brown's motion to dismiss due to its destruction.**3**

Accordingly, we affirm Brown's conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

_____

**3** While Brown also argues that the Government's failure to preserve the marijuana resulted in a violation of due process under this same theory, we find this theory inapplicable to that claim. The presence or absence of the marijuana had neither inculpatory nor exculpatory value in Brown's trial for a firearm violation. Rather, as explained above, the marijuana is important only so far as it created probable cause to support the search of the Pathfinder, which in turn led to the discovery of the firearm. This support would be equally valid whether the material in question was marijuana or not, so long as Officer Sampson reasonably believed it to be so.