UNITED STATES of America, Appellee,

v.

Buel Lee SHEPHERD, Appellant.

No. 81–5074.

United States Court of Appeals,
Fourth Circuit.

Reargued Nov. 11, 1982.

Decided Aug. 4, 1983.

Franklin Smith, Elkin, N.C., for appellant.

David Smith, Asst. U.S. Atty., Greensboro, N.C. (H.M. Michaux, Jr., U.S. Atty., John W. Stone, Jr., Asst. U.S. Atty., Greensboro, N.C., on brief), for appellee.

Before PHILLIPS, MURNAGHAN and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

Buel Lee Shepherd was convicted of possessing thirty-eight gallons of moonshine whiskey on which the tax had not been paid, and of removing it from its place of manufacture and concealing it, in violation of 26 U.S.C. §§ 5205(a)(1), 5604(a)(1) and 5601(a)(12). On appeal, Shepherd contends

that his arrest and the warrantless search of his automobile were unlawful. Therefore, he urges, the fruits of the illegal arrest and search were improperly admitted at his trial. We hold that Shepherd's arrest was supported by probable cause, and that the warrantless search was justified under the automobile exception to the fourth amendment.

## I.

Late in the fall of 1980, Lester Russell, an investigator for the North Carolina liquor control board in Winston-Salem, received information from a reliable confidential informant that the defendant was engaged in an illegal whiskey enterprise at his residence in North Wilkesboro, North Carolina, located fifty miles away. According to Agent Russell, on approximately thirty earlier occasions the informant had provided information that had led to over twenty-five convictions. After receiving the informant's report, Russell, together with North Carolina Alcohol and Beverage Control (ABC) Agent Robert Cobb and Agent Aubrey Huffman from the federal Bureau of Alcohol, Tobacco and Firearms, set up surveillance of the defendant's residence on the morning of December 3, 1980. Russell remained in the police vehicle some distance away while Cobb and Huffman positioned themselves in woods approximately one hundred yards to the rear of Shepherd's residence.

At about 8:15 a.m., Huffman observed Shepherd leave his residence and walk to a 1971 Mercury Cougar parked approximately seventy-five yards to the rear of the house. After opening the trunk of the automobile, Shepherd made three trips into a wooded area near the vehicle and returned carrying translucent one gallon white plastic jugs which he placed in the open trunk.[1] Shepherd then closed the trunk compartment and walked to the driver's side of the automobile. At this point Officer Russell drove up. Agent Huffman, leaving his observation point in the woods, walked up to Shepherd and asked him for the key to the

trunk. Shepherd took his car keys from his pocket and handed them to Huffman. Huffman then opened the trunk. The trunk of the car contained thirty-eight capped one gallon plastic jugs. The jugs were later opened without a warrant. Each jug contained moonshine. No tax had been paid and no tax stamps had been affixed to the jugs.

## II.

We find no merit in Shepherd's contention that the agents lacked probable cause to arrest him. The agents had been supplied a tip from a highly reliable informant whose aid in earlier cases netted over twenty-five convictions on approximately thirty tips. Upon taking up surveillance at the location advised by the informant, the agents witnessed behavior consistent with the tip and with an illegal moonshine operation. The combination of a reliable tip and first-hand corroborative observation of suspicious activity provided ample cause to suspect Shepherd was engaged in criminal activity justifying arrest. *See United States v. Branch,* 565 F.2d 274 (4th Cir.1977) (arrest supported by probable cause when police, acting on informant's tip that one Branch, carrying drugs, would alight from certain air flight, arrested man matching informant's description getting into car registered in Branch's name).

## III.

We turn now to the more difficult issue of whether the warrantless search of Shepherd's automobile violated the fourth amendment to the United States Constitution. The fourth amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

---

1. The record does not indicate how many jugs per trip Shepherd carried.

Although by its terms the amendment does not equate unreasonable searches with warrantless ones, the Supreme Court has long held this view. In *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967), for example, the Court wrote that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the fourth amendment—subject only to a few specifically established and well-delineated exceptions."

The search in this case was, of course, carried out without a warrant. The specific exception to the warrant requirement which the government urges upon us is the so-called "automobile exception," first announced in *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).[2] In *Carroll,* federal prohibition agents and a state policeman observed a car traveling on the road between Detroit and Grand Rapids, Michigan. Several factors led the agents to believe the vehicle was involved in bootlegging: illicit liquor traffic was prevalent in the area; the car's occupants had been observed before in the vicinity; and the agents recognized the occupants as persons having previously attempted an illegal liquor sale. The vehicle was stopped, and the agents proceeded to search the interior, uncovering a cache of illegal liquor hidden in the upholstery. The occupants were then placed under arrest. At their trial they maintained that the warrantless search of their car violated the fourth amendment. On appeal, the Supreme Court rejected this claim, reasoning that the suspects and evidence might have left the jurisdiction of the authorities by the time a warrant could have been obtained. The Court made clear that it was the particular exigence of the situation that justified a warrantless search, adding that "[i]n cases where the securing of a warrant is reasonably practicable, it must be used...." *Id.* at 156, 45 S.Ct. at 286.

The automobile exception took on new aspects in *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).[3] There, the suspects in an armed robbery were stopped on a public street in a station wagon one hour after the crime occurred. The occupants of the car were arrested, and the station wagon was driven to the police station where an immediate search uncovered two revolvers and other items which were admitted into evidence against one defendant in his trial for armed robbery. Despite the fact that, unlike the situation in *Carroll,* there was no danger that the suspect vehicle would leave the jurisdiction, since its owner was in jail, the Supreme Court validated the warrantless search:

Neither Carroll ... nor other cases in this Court require or suggest that in every conceivable circumstance the search of an auto even with probable cause may be made without the extra protection for privacy that a warrant affords. But the circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable; moreover, the opportunity to search is fleeting since a car is readily movable. Where this is true, as in Carroll and the case before us now, if an effective search is to be made at any time, either the search must be made immediately without a warrant or the car itself must be seized and held without a warrant for whatever period is necessary to obtain a warrant for the search ....

2. The government also maintains that Shepherd consented to the search since he voluntarily relinquished the key at Agent Huffman's request. However, there is no evidence that Shepherd's consent was obtained. The officer asked for Shepherd's key, not for permission to search the trunk. Both Officer Huffman and Officer Russell agreed in their testimony that no consent had been obtained. Moreover, obeying a polite request issued by someone obviously in authority and capable of enforcing the request does not amount to "consent" to the request. Citizens may obey police commands, even those put in the form of polite requests (e.g., "please raise your hands above your head"; "please give me your keys"), without any derivation from such non-volitional acts of a conclusion that they have waived their constitutional rights.

3. For developments in the area of automobile searches between 1925 and 1970, *see generally* 2 W. LaFave, *Search and Seizure* § 7.2 (1978).

Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the "lesser" intrusion is permissible until the magistrate authorizes the "greater." But which is the "greater" and which the "lesser" intrusion is itself a debatable question and the answer may depend on a variety of circumstances. *For constitutional purposes we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.*

*Id.* at 50–52, 90 S.Ct. at 1980–1981 (footnote omitted) (emphasis supplied). *See also Texas v. White,* 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975) (per curiam), discussed below.

█ While Shepherd acknowledges the relevance of these precedents, he argues that two factors block the application of the automobile exception in his case: the car's location on private property, as opposed to the public highway,[4] and the absence of exigent circumstances once the agents gained control of the vehicle.

In response to these contentions we first point out that the Supreme Court has never held that a vehicle's location on private property forecloses application of the automobile exception under all circumstances. In *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (plurality opinion), the Court did note the enhanced privacy interest residing in a vehicle parked in a driveway. But in invalidating a warrantless vehicle search by police following a lengthy murder investigation, the *Coolidge* plurality chiefly relied on the authorities' failure to obtain a warrant despite ample advance opportunity to do so and despite knowledge that the car was not about to disappear. The vehicle, which authorities knew to contain incriminating evidence, had been under surveillance for days. At the time the car was seized in Coolidge's driveway, there was no indication that the vehicle was about to be driven away.

These circumstances contrast sharply with the facts before us. Prior to taking up surveillance on the morning of December 3, the agents had no knowledge that a specific vehicle was involved in Shepherd's moonshining operation. The informant had merely reported that Shepherd was making illegal liquor. There was no advance opportunity to obtain a search warrant for Shepherd's car before observing the defendant loading jugs into the vehicle on his property. Indeed, even had the informant specifically related that Shepherd would be transporting whiskey on the morning of December 3, no warrant could have issued, absent information about the vehicle to be used, which would have met the specificity requirements prescribed under the law. *See United States v. Vento,* 533 F.2d 838, 866–67 (3d Cir.1976). Furthermore, the agents moved in only when it became obvious that Shepherd had finished loading the vehicle and was about to drive off. At that moment, exigent circumstances compelled the agents to act or else risk losing both quarry and contraband. It makes no difference that the car was seized on private property rather than stopped on the public highway. Cases such as *Coolidge* which draw this distinction involve stationary vehicles whose owners are absent from the scene. Here, the car was one brief moment away from being driven off by its owner. The courts have recognized that a car traveling on the public highway affords less privacy than the home, but that one's expectation of privacy in a vehicle is enhanced when the car is nestled in the driveway. *See Cardwell v. Lewis,* 417 U.S. 583, 590, 94 S.Ct. 2464, 2469, 41 L.Ed.2d 325 (1974); *United States v. Bradshaw,* 490 F.2d 1097, 1103 (4th Cir.1974), *cert. denied,* 419 U.S. 895, 95 S.Ct. 173, 42 L.Ed.2d 139 (1974). Still, the

---

**4.** Evidently, the car was actually parked on property belonging to Shepherd's neighbor. For purposes of argument we assume no difference in the privacy interest residing in a car parked on one's own property and a car parked on the property of one's next door neighbor.

danger posed by the inherent mobility of an automobile must outweigh whatever enhanced privacy interest exists when the car is parked at home if it appears the car is about to take flight. Furthermore, we reject the notion that this was not a valid search and seizure but that it would have been converted into one had the officers waited until Shepherd drove his vehicle onto a public highway and then stopped him there. *See Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), discussed below.

We illustrate our position by postulating different facts.[5] Suppose Shepherd had been secretly observed carrying gallon jugs from the woods into his house. We have no trouble saying that a search warrant would have been essential before agents could enter the house and seize the containers. The law has long recognized that the sanctity of the home may not be breached by government agents lacking warrants, except under the most extraordinary circumstances, as where life is endangered or where authorities are in hot pursuit of a criminal suspect. *See Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976).

As a second example, suppose Shepherd was seen storing jugs in a nearby wood shed and then padlocking the door. There too we would require a warrant, for a building within the curtilage of the home enjoys the same high expectation of privacy that the dwelling does. *See Taylor v. United States,* 286 U.S. 1, 5, 52 S.Ct. 466, 467, 76 L.Ed. 951 (1932); *Martin v. United States,* 183 F.2d 436, 439 (4th Cir.1950). *Cf. United States v. Hayden,* 140 F.Supp. 429, 435 (D.Md.1956) ("shed . . . is protected against unreasonable searches without regard to whether or not it is within the curtilage of a private dwelling"). *See also Katz v. United States,* 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967) (any intrusion upon "the privacy upon which [one] justifiably relied" constitutes a search within the meaning of the fourth amendment).

What if Shepherd had carelessly stacked the jugs beside his house and then driven off on an errand? By leaving the jugs in the open Shepherd would have indicated no expectation of privacy that his liquor would not be spotted, and authorities could act without a warrant. *See Katz v. United States,* 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967); *United States v. Ramapuram,* 632 F.2d 1149, 1153 (4th Cir. 1980), *cert. denied,* 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981).

Finally, what if Shepherd had loaded the jugs into the trunk of his Mercury, but then gotten into his pickup truck and driven off? Here too we would expect the authorities to recognize the absence of exigent circumstances which would justify a warrantless seizure, and to dispatch one of their number to obtain a warrant. Of course, surveillance could continue, and if Shepherd's neighbor were to appear on the scene with a set of car keys and the obvious intention of leaving in the Mercury, the danger of losing the evidence would justify an immediate seizure of the car.

The reasonableness of the government's search in this case arose out of both the genuine exigency of the situation and the unreasonableness of alternatives. To have required the agents simply to confiscate the jugs and hold them and Shepherd on the scene while one of the agents drove fifty miles to Winston-Salem in search of a federal magistrate to certify an inspection would have been a pointless exercise in the presence of clear probable cause. Such a procedure would have been a far greater intrusion into Shepherd's privacy than the course of action actually taken. If the liquid inside the jugs had turned out to be spring water, Shepherd would have been on his way in a few minutes.

■ We are not moved by the argument that exigent circumstances fall away, and a warrant is therefore required, as soon as the driver of the suspect vehicle is arrested,

---

**5.** The following examples are intended for illustrative purposes only.

as apparently was the case here.[6] *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), discussed above, clearly illustrates that the arrest of an auto's occupants does not preclude a warrantless search. The *Chambers* principle was affirmed in *Texas v. White,* 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975) (per curiam), in which police had seized the car of a suspect accused of attempting to pass bad checks. Just before the defendant was arrested in his car in a bank parking lot, officers saw him stuff papers between the seats. Back at the police station, the defendant refused to give consent to a search of his impounded vehicle. Without a warrant, the officers proceeded to search the vehicle anyway, uncovering four bad checks which the defendant had tried to pass at another bank. The Supreme Court, in a per curiam opinion (Brennan and Marshall, JJ., dissenting), upheld the admissibility of the four wrinkled checks, writing that, as in *Chambers,* "the probable cause factor that developed on the scene still obtained at the station house." *Id.* at 68, 96 S.Ct. at 305 (citations omitted). The absence of exigent circumstances at the time the search was conducted evidently did not concern the Court.

The Fifth Circuit has interpreted *Texas v. White, Chambers v. Maroney,* and other Supreme Court authority as recognizing that "exigence is to be determined as of the time of seizure of an auto, not as of the time of its search." *United States v. Mitchell,* 538 F.2d 1230, 1232 (5th Cir.1976) (en banc), *cert. denied,* 430 U.S. 945, 97 S.Ct. 1578, 51 L.Ed.2d 792 (1977). This we perceive to be an accurate statement of the law and one which makes clear the constitutionality of the search in this case. The

authorities had ample cause to believe Shepherd's Mercury was about to be used to transport contraband.[7] The agents' surveillance corroborated the tip provided by the informant that Shepherd was manufacturing bootleg whiskey. The agents were propelled into action when it appeared Shepherd was preparing to depart. When the vehicle was seized with probable cause, it became subject to immediate search.

We believe that the result in this case can be harmonized with *United States v. Bradshaw,* 490 F.2d 1097 (4th Cir.1974), *cert. denied,* 419 U.S. 895, 95 S.Ct. 173, 42 L.Ed.2d 139 (1974). In *Bradshaw,* alcohol control agents were in the process of searching for a still which they had probable cause to believe was in operation on defendant's property. While walking around the defendant's house, the agents detected the odor of moonshine emanating from a wood paneled pickup truck parked nearby. Peering through cracks in the paneling, the agents spied several plastic jugs filled with liquid. They entered the truck, opened the jugs, and found moonshine. We held that the warrantless search was unconstitutional on two grounds. First, since the truck was parked beside the defendant's house, a heightened expectation of privacy obtained which the agents invaded without a warrant. Second, we held that a more reasonable course would have been for two of the agents to stand guard over the vehicle while the third sought a search warrant. Furthermore, since Bradshaw was absent from the scene, no individual liberty interest would have been implicated merely by seizing and holding the car.

Absent from *Bradshaw* and present in this case is the compelling circumstance

---

**6.** The facts are unclear as to whether Shepherd was arrested before or after the search of his car. Probable cause to arrest him existed at both points.

**7.** No search, even one conducted under the most exigent of circumstances, is justified unless the government demonstrates that its officers had probable cause to believe evidence of criminality would be uncovered. Probable cause

means less than evidence which would justify condemnation or conviction . . . . Probable cause exists where the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information, [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. . . .

*Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1948) (citations omitted).

of imminent flight. The pick-up truck in *Bradshaw* was parked and unattended, but Buel Shepherd was at the point of climbing into his car and driving away. This is the circumstance that prompted the authorities to act. At the risk of belaboring the point, we stress that, assuming a heightened expectation of privacy in one's vehicle when the car is parked at home, this expectation must nevertheless yield in a situation where authorities have probable cause to believe that incriminating evidence is about to take wing. In such a case, the more reasonable course is to proceed with a warrantless search and, if nothing is found, promptly to release the suspect and his or her vehicle.

We also think this case is distinguishable from *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), and *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). In *Chadwick,* federal officials suspicious of a footlocker leaking talcum powder watched as the defendant carried the trunk from a train station to his waiting automobile. After the defendant loaded the footlocker into the trunk of his car, agents moved in, arrested the suspect, and opened the footlocker without a search warrant, disclosing a large quantity of marijuana.

The Supreme Court invalidated the search, rejecting the argument that the warrant requirement of the fourth amendment protects only interests associated with the home. As a repository for the personal effects of an individual, a footlocker holds a greater expectation of privacy than an automobile, the Court reasoned, and it makes no difference that, like the automobile, a footlocker is highly mobile. The government should not enter the zone of privacy associated with a footlocker without a search warrant.

*Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), involved very similar facts, except that the defendant had already departed the airport in a taxi along with his suspicious suitcase when police stopped the cab. The Court rejected the argument that the automobile exception applied. Writing in concurrence, Chief Justice Burger stated the essential position of the Court:

The relationship between the automobile and the contraband was purely coincidental, as in Chadwick. The fact that the suitcase was resting in the trunk of the automobile at the time of respondent's arrest does not turn this into an "automobile" exception case. The Court need say no more.

*Id.* at 767, 99 S.Ct. at 2594.

*United States v. Chadwick* and *Arkansas v. Sanders* were considered at length in *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). In *Ross,* District of Columbia police officers acting on information that the defendant was peddling narcotics out of his car located the suspect vehicle traveling on the city streets. The car was pulled over, and Ross was ordered to get out. When a pistol was found in the glove compartment, Ross was arrested and handcuffed. One of the officers took Ross' keys and opened the trunk, where he discovered a closed brown paper bag. He opened the bag and found a number of glassine bags containing white powder. The officer closed the paper bag and placed it back in the trunk. The car was driven to headquarters where a search, also warrantless, disclosed a zippered leather pouch. The pouch was opened and found to contain $3,200 in cash. A sample of the white powder in the paper bag was also taken and upon analysis determined to be heroin.

Prior to his trial for possession of heroin with intent to distribute, Ross moved to suppress the fruits of the warrantless searches of the paper bag and leather pouch. The motion was denied and Ross was eventually convicted.

On appeal the Supreme Court upheld the search, holding that under the automobile exception, officers "may conduct a search of the vehicle that is as thorough as a magistrate could authorize in a search warrant 'particularly describing the place to be searched.'" *Ross,* 456 U.S. at 800, 102 S.Ct. at 2159, 72 L.Ed.2d at 578, *quoting* U.S. Const. amend. 4. The scope of such a search warrant could include the compartments and containers within the vehicle whose contents were not in plain view. The

majority carefully distinguished *Chadwick* and *Sanders* on the ground that in those cases the object of the government's search was confined to the interior of the footlocker and suitcase, whereas the officers in *Ross* had probable cause to search the entire vehicle.

We believe that the case before us is more akin to *Ross* than to *Chadwick* and *Sanders.*[8] Here the object of the agents' search was not directed solely to the interior of the few jugs which were seen loaded into the trunk of Shepherd's car. The agents had good reason to suspect, based on the information they had gathered as well as what they had seen with their own eyes, that the car was an instrumentality of Shepherd's illegal whiskey enterprise, and that a search of the vehicle would disclose additional evidence. As it turned out, this hypothesis proved correct: upon opening the trunk the agents found thirty-eight gallons of illegal liquor, far more than they had observed from their hiding place. Under *Ross,* once the officers had probable cause to search the vehicle, they also acquired the authority to open any of the closed containers found therein.

### IV.

We hold that the arrest of Buel Lee Shepherd was supported by probable cause and that the warrantless search of his vehicle was justified under the automobile exception.[9] His conviction is, therefore,

AFFIRMED.

**8.** We admit considerable doubt that the plastic gallon jugs here are deserving of the same privacy interest as the footlocker in *Chadwick* and the suitcase in *Sanders.* However, the *Ross* court held that all containers are to be accorded equal dignity under the law. *Ross,* 456 U.S. at 823, 102 S.Ct. at 2171, 72 L.Ed.2d at 592. We are tempted to say that plastic jugs, under the circumstances of this case, "by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance." *Arkansas v. Sanders,* 442 U.S. 753, 764–65 n. 13, 99 S.Ct. 2586, 2593 n. 13, 61 L.Ed.2d 235 (1979). In the context of this case, a plastic jug partakes more of the character of a gun case than a suitcase.

**9.** Because we find that the automobile exception governs this case, we need not consider

MURNAGHAN, Circuit Judge, dissenting:

It is with no joy that I write to announce dissent. Nevertheless, the facts as to whether an exigency existed, justifying the jettisoning of Fourth Amendment safeguards, are the facts. Buel Lee Shepherd was not free to drive his vehicle away. His car keys had been impounded even before the trunk of the car had been opened.[1] The motorcar rested not on the public highway, where vehicles whizzing by emphasize the predominance of mobility, but on private property legitimately employed by Shepherd as a parking area. There were no less than two policemen so that, even apart from the possible availability of a warrant through telephonic or wireless communication, one of them could have remained guarding the car and insuring its immobility while the other proceeded with the arrested Shepherd to a place where a warrant could be obtained.

Consequently, there simply was no exigency, and, absent it, no justification for disregard of the Fourth Amendment requirement that a warrant be obtained. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

whether the plain view doctrine is also applicable. *See Texas v. Brown,* —— U.S. ——, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); *United States v. Haynie,* 637 F.2d 227 (4th Cir.1980), *cert. denied,* 451 U.S. 972, 101 S.Ct. 2051, 68 L.Ed.2d 351 (1981).

**1.** The insistence that Shepherd surrender his car keys, and the fact that the burden (which was never met) properly rested on the shoulders of the police who were trying to justify a warrantless search and seizure to prove whether or not Shepherd had been arrested made irresistible the conclusion that Shepherd was effectively immobilized before the search of the trunk, and, *a fortiori,* of the opaque containers, took place.