14 F.3d 597
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Dawn Francine KENNEDY, Defendant-Appellant.
 No. 93-5072.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: Nov. 5, 1993.
Decided: Dec. 9, 1993.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Winston-Salem. Norwood Carlton Tilley, Jr., District Judge. (CR-92-184-WS)
 David F. Tamer, Winston-Salem, N.C., for appellant.
 Benjamin H. White, Jr., U.S. Attorney, Paul A. Weinman, Asst. U.S. Attorney, Greensboro, N.C., for appellee.
 Before NIEMEYER, HAMILTON, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Following a jury trial, Dawn Francine Kennedy was convicted of conspiracy to distribute cocaine hydrochloride and marijuana, in violation of 21 U.S.C.A. Secs. 841(b)(1)(B), 846 (West 1981 & Supp.1993). Kennedy appeals, claiming that the district court committed reversible error by denying her motion to suppress evidence seized during a warrantless automobile search and admitting over her objection a gun seized from a co-conspirator before her involvement in the conspiracy. We find these claims are without merit; consequently, we affirm.
 
 I. Search of the Geo Prizm
 
 2
 The district court held a hearing on Kennedy's pretrial motion to suppress evidence seized from a Geo Prizm she was driving on February 8, 1992. Detective David Lamb of the Winston-Salem Police Department testified that he had learned from a Crimestoppers report that three people named Dawn Kennedy, Dale, and Irene were distributing cocaine from Room 216 of the Travel Host Motel. He verified that the room was rented to Irene Harry. He also learned from an informant that "Dale" actually was Edward Dane Jeffus. The informant knew Jeffus was bringing cocaine from Florida and that the three individuals were in the process of distributing it from Room 216 of the Travel Host Motel. On February 7, the informant told Detective Lamb that Jeffus would be returning from Florida that evening with a cocaine shipment. Early the next morning, the informant told Lamb that Jeffus had returned and was distributing cocaine from a blue Geo Prizm driven by Dawn Kennedy, but titled in her sister's name, Diane Parrish.
 
 
 3
 Lamb testified that he and Detective Cook went to the motel to conduct surveillance. Outside Room 216, they discovered a trash bag in which they found several documents containing Jeffus' name, and a baggie corner with white residue in it and a straw. Both the baggie and the straw field-tested positive for cocaine. A blue Geo Prizm pulled up in front of Room 216 while the officers were conducting surveillance and a man and a woman got out and entered the motel room. Noting the car's license plate number, Lamb verified with the Division of Motor Vehicles that it was registered to Diane Parrish. (J.A. 52). Lamb and Cook left the scene to obtain a search warrant, leaving other officers to maintain surveillance, including Officer Mike Poe. Lamb gave Poe all the information he had up to that point and instructed him to stop and search the Geo Prizm if it left the scene.
 
 
 4
 Officer Poe confirmed that the license plate number on the Geo Prizm matched the car Detective Lamb described. At around 2:00 p.m., Poe watched as a woman and a man drove away in the car. He later learned that the driver was Dawn Kennedy and that Edward McMillian was her passenger. Poe and Sergeant Charles followed the car into a nearby restaurant parking lot. Poe then told the occupants that he had probable cause to search the vehicle and asked them to get out. Sergeant Charles frisked McMillian and found a .32-caliber gun in his pocket. The search of the car revealed cocaine in a shaving kit between McMillian's feet, cocaine in Kennedy's pocketbook, and several partially burned marijuana cigarettes.
 
 
 5
 Law enforcement officials may search a vehicle without a warrant where they have probable cause to believe the vehicle, or a receptacle within it, contains contraband or evidence of criminal activity. California v. Acevedo, 59 U.S.L.W. 4559, 4561 (U.S.1991); United States v. Shepherd, 714 F.2d 316, 318-19, 323 (4th Cir.1983), cert. denied, 466 U.S. 938 (1984). Probable cause is "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). Kennedy argues that the district court erroneously denied her motion to suppress the evidence seized from the Prizm because there was no probable cause to stop and search the car.
 
 
 6
 Anonymous tips and those of confidential informants may establish probable cause when they are corroborated by independent police investigation. As long as the probable veracity and basis of knowedge of individuals providing hearsay information and the results of independent police investigation or observation make it reasonably likely, based on the totality of the circumstances, that the information is correct, probable cause exists. Gates, 462 U.S. at 238; see United States v. Miller, 925 F.2d 695, 699 (4th Cir.) (probable cause found where officer's observations corroborated substantial portion of informant's tip), cert. denied, 60 U.S.L.W. 3259 (U.S.1991).
 
 
 7
 In United States v. Draper, 358 U.S. 307 (1959), a reliable informant who had always given accurate information, told a policeman that Defendant Draper was selling drugs and that he would be return ing to Denver from Chicago with a shipment of drugs by train on September 8 or 9. The informant gave a detailed description of Draper. Id. at 309. On the morning of September 9, officers saw a person matching Draper's description leaving an incoming Chicago train. They stopped and searched him, discovering two envelopes of heroin. Id. at 309-10. The Supreme Court held that when the officers saw a man matching the description given to them by their reliable informant, they had " 'reasonable grounds' to believe that the remaining unverified bit of ... information--that Draper would have the heroin with him--was likewise true." Id. at 313. Accordingly, the Court found that probable cause existed to arrest him and then conduct a search incident to a lawful arrest. Id. at 314.
 
 
 8
 Here, police officers received tips from a Crimestoppers report and a well-known informant indicating that Kennedy and two others were distributing drugs from Room 216 of the Travel Host Motel. The informant identified with specificity the Geo Prizm from which Kennedy and her co-conspirators distributed drugs. Police officers independently were able to verify the identity of the woman renting the motel room, the Geo Prizm, and the fact that drug activity was ongoing in motel room. In light of the matching information from different sources and the police corroboration of a substantial portion of that information, the trial court's denial of the motion to suppress was not clearly erroneous.
 
 
 9
 II. Admission of the Firearm Seized From Jeffus
 
 
 10
 Kennedy claims that the district court committed reversible error by admitting into evidence a firearm seized from co-conspirator Jeffus before Kennedy became part of the conspiracy. Assuming arguendo that the evidence should not have been admitted, its admission amounts to harmless error. A nonconstitutional error is harmless if it is " 'highly probable that the error did not affect the judgment.' " United States v. Nyman, 649 F.2d 208, 212 (4th Cir.1980) (citation omitted).
 
 
 11
 In light of the evidence of Kennedy's involvement in the drug conspiracy introduced at trial and the fact that she was not charged with any firearms violations, it is highly probable that the admission of the firearm seized from Jeffus did not affect the jury's verdict.
 
 Conclusion
 
 12
 For these reasons, we affirm Kennedy's conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED