**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 95-5328

ANTHONY D. WILLIAMSON, a/k/a Ant,
a/k/a Sebago,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 95-5329

MELODY ANNETTE NIBLETT,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 95-5334

EMJADIA PORTER, a/k/a Justice, a/k/a
Troy Miller,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 95-5335

GREGORY TODD HARRELL,
Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Virginia, at Roanoke.
Samuel G. Wilson, District Judge.
(CR-94-37-R)

Argued: April 5, 1996

Decided: June 4, 1996

Before WILKINSON, Chief Judge, MICHAEL, Circuit Judge, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Irving Ray Byrd, Jr., Salem, Virginia, for Appellant
Niblett; Rhonda Lee Overstreet, Roanoke, Virginia, for Appellant
Harrell; Jonathan Mitcalfe Apgar, DAMICO & APGAR, Roanoke,
Virginia, for Appellant Williamson; William H. Cleaveland, RIDER,
THOMAS, CLEAVELAND, FERRIS & EAKIN, Roanoke, Virginia,
for Appellant Porter. Thomas Ernest Booth, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON
BRIEF:** Gary L. Lumsden, Roanoke, Virginia, for Appellant Harrell.
Robert P. Crouch, Jr., United States Attorney, Karen B. Peters, Assis-
tant United States Attorney, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Anthony D. Williamson, Melody Annette Niblett, Emjadia Porter, and Gregory Todd Harrell were charged with numerous offenses in connection with their involvement in a crack cocaine conspiracy in Roanoke, Virginia. A jury convicted the defendants on the following counts. Williamson was convicted of conspiracy to possess with intent to distribute and to distribute crack, aiding and abetting the distribution of crack, possessing with intent to distribute crack, and aiding and abetting the possession with intent to distribute crack. See 21 U.S.C. §§ 841(a)(1) & 846; 18 U.S.C. § 2. Williamson was also convicted of knowingly possessing a firearm with an obliterated serial number, see 18 U.S.C. § 922(k), and of using or carrying a firearm in relation to a drug trafficking offense or a crime of violence, see 18 U.S.C. § 924(c). Niblett was convicted on one count of conspiracy and one count of possession with intent to distribute crack. Harrell was convicted on one count of conspiracy and one count of aiding and abetting the distribution of crack. Porter was convicted on one conspiracy count, one count of intimidation of a witness, see 18 U.S.C. § 1513(a)(2), and one count of using or carrying a firearm in relation to a drug trafficking offense or a crime of violence. Williamson was sentenced to 211 months of imprisonment, Niblett to 33 months, Harrell to 240 months, and Porter to 270 months. The defendants raise numerous challenges to their convictions and sentences, but we affirm.

I.

In October 1993 Williamson and Harrell sold $250 worth of cocaine to a confidential government informant, Shawn Muse, in the apartment of Harrell's girlfriend. The following month, Muse drove Harrell and Williamson to New York City to buy cocaine. In New York, Harrell gave money to Williamson, who bought a freezer bag full of powdered cocaine while Harrell and Muse waited for him in a bar. Muse saw Williamson give the cocaine to Harrell, and Harrell said that he planned to cook the cocaine into crack and sell it. Harrell and Muse then drove back to Roanoke, leaving Williamson in New York.

Muse's brother, Antwan Muse, was a drug dealer who knew Williamson and Harrell. In January 1994 Williamson and David "Poo" Grant accused Antwan Muse of stealing drugs from them at the apartment of Harrell's girlfriend, the site of the earlier sale to Shawn Muse. Williamson pulled out a chrome 9mm pistol with an extended clip, "clicked it back," and put it against Antwan Muse's head. Antwan Muse was with his son at the time, and another child was also in the room. Antwan Muse testified that Williamson then punched him and said that "[h]e was going to have some bodies like he was going to kill up everybody in the house." Williamson left, and later Antwan Muse filed a criminal complaint against him with the local police.

On January 24, 1994, police stopped Williamson's car because they saw Porter (for whom they had an arrest warrant) in the passenger seat. The police arrested Porter and asked Williamson if they could search his car, a 1971 orange Ford Mustang. Williamson consented to the search. The police found two rocks of crack in Williamson's pool cue bag in the trunk of the car. They then arrested Williamson and searched him. The officers found a pager, $40 in cash, and 13 grams of crack in a plastic bag in his underwear.

Three days later Porter rented an apartment that Williamson had earlier considered renting. Williamson had declined renting the apartment because the property manager would have required him to provide proof of employment. Shortly after Porter signed the lease on the apartment, Williamson and Poo Grant moved in. Williamson paid the February rent and asked the property manager to make some repairs. Williamson was added to Porter's lease as a co-lessee at the end of March.

Poo Grant and Melody Niblett were boyfriend and girlfriend (they later married). They were co-owners of a car that had a vanity license plate reading, "POO-MEL." On the evening of February 19, 1994, Roanoke police were staking out the Indian Village housing project. The POO-MEL car was parked on the street in front of some of the project apartments, and police saw a pickup truck drive up to the car. Grant got out of the passenger side of the car and walked over to the pickup. The driver handed money to Grant, who then gave the money to Niblett through the driver side window. Grant then walked into a nearby apartment. Grant returned from the apartment a few minutes

4

later, walked over to the pickup, and handed the driver a knife. Grant returned to the POO-MEL car, and the car and the pickup drove off in opposite directions. Police stopped the car and asked Niblett, who was driving, for permission to search it. Niblett consented to the search, but asked if she could first get a pack of cigarettes that had been lying on the floorboard behind the driver's seat. The officer asked Niblett if he could search the cigarette pack, and Niblett consented. The officer discovered 11 grams of crack inside the cigarette pack and arrested Niblett. The officer also found $370 in cash in Niblett's jacket pocket. A search of the car revealed a small amount of marijuana, a set of scales, and more cash.

Williamson was arrested on an outstanding warrant on April 5, 1994. Police then obtained a warrant to search his apartment. Niblett and Grant were in the apartment when police arrived to execute the warrant. Police found $2,810 in cash and more than 110 grams of crack in a closet in Williamson's bedroom. In a second closet in Williamson's bedroom they found a .22 caliber pistol and a loaded 9mm pistol with a defaced serial number. Under Williamson's mattress they found an additional $1,178 in cash. In Grant's bedroom the officers found a small amount of crack and $1,630 in cash. In the kitchen officers found scales and more than 32 grams of crack.

Less than a week later, Porter saw Shawn Muse and said to him, "I ought to finish your snitching ass right here." Porter then showed Muse a 9mm pistol with a long clip. Muse reported the threat to the police, who obtained a warrant and arrested Porter in a bedroom in his girlfriend's apartment. When they arrested Porter, the police seized a loaded 9mm pistol, a pager, and $4,572 in cash.

II.

Defendants first challenge the sufficiency of the evidence.

When reviewing a sufficiency claim, we view the evidence in the light most favorable to the government. The verdict must stand if there is substantial evidence to support it. Glasser v. United States, 315 U.S. 60, 80 (1942). If "any trier of fact could have found the essential elements of the crime beyond a reasonable doubt," the conviction must be upheld. Jackson v. Virginia, 443 U.S. 307, 319 (1979)

5

(emphasis in original); United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

There was sufficient evidence that all the defendants were guilty of conspiracy. A defendant need not be aware of every aspect of the conspiracy to be convicted for participating in it. The government is required only to prove that "he join[ed] the conspiracy with an understanding of the unlawful nature thereof and willfully join[ed] in the plan on one occasion . . . even though he had not participated before and even though he played only a minor part." United States v. Roberts, 881 F.2d 95, 101 (4th Cir. 1989). The government must only prove the existence of an agreement, express or implied, between two or more persons (who are not government agents) to commit an unlawful act, and it may meet its burden of proof by means of circumstantial evidence. See United States v. Morsley , 64 F.3d 907, 919 (4th Cir. 1995), cert. denied, 116 S. Ct. 749 (1996); United States v. Heater, 63 F.3d 311, 323-24 (4th Cir. 1995), cert. denied, 116 S. Ct. 796 (1996).

Muse's testimony established that Williamson and Harrell jointly sold crack and that Williamson and Harrell jointly traveled to New York to obtain cocaine to be cooked into crack. The defendants argue that Muse was not a credible witness, but questions of witness credibility are the province of the jury, not of the court of appeals. United States v. Reavis, 48 F.3d 763, 771 (4th Cir.), cert. denied, 115 S. Ct. 2597 (1995). In any event, Muse's testimony was corroborated by a surveillance tape of Muse's first undercover buy and by the evidence seized from Williamson and Harrell. Muse's testimony was further corroborated by evidence seized from the Williamson-Porter-Grant apartment.

Porter's connection to the conspiracy is established by the evidence that he rented the apartment Williamson and Grant used to store cocaine, cash, and weapons, and that he allowed Williamson and Grant to use the apartment for illicit purposes. There was also evidence at trial that Porter frequently communicated with the other conspirators by means of cellular telephones and pagers. Indeed, telephone and pager records showed that Porter, Harrell, Niblett, Grant, and Williamson had been in nearly constant contact between January and March 1994. Finally, the jury could have inferred that

6

Porter threatened Muse out of a desire to protect his co-conspirators and further the ends of the conspiracy. See United States v. Balzano, 916 F.2d 1273, 1281 (7th Cir. 1990); United States v. Guerrero, 803 F.2d 783, 785 (3d Cir. 1986).

Niblett was not as tightly connected to the conspiracy as were the other defendants, but her participation was still proven by substantial evidence. We say this even though Grant testified that Niblett was not a member of the conspiracy, and even though Niblett correctly points out that mere association with individuals in a conspiracy cannot, without more, give rise to a conspiracy conviction. United States v. Giunta, 925 F.2d 758, 764 (4th Cir. 1991). In this case, however, the government has established something more than mere random presence on one occasion at the scene of criminal activity. Niblett was arrested with Grant after crack was found in her cigarette pack, she co-owned a car in which scales and drugs were found, and she was driving the car when the police stopped it. She also was found in the Grant-Williamson-Porter apartment when it was raided. A defendant's repeated presence during drug crimes tends to show conscious participation in a conspiracy. See United States v. Martinez-Moncivais, 14 F.3d 1030, 1035 (5th Cir.), cert. denied, 115 S. Ct. 72 (1994); United States v. Echeverri, 982 F.2d 675, 678 (1st Cir. 1993).

For similar reasons, the evidence was sufficient to convict the defendants of the substantive drug counts as well. Given the large amount of crack that was seized, the jury could have properly inferred the defendants' intent that it be distributed and that they aided and abetted each other in its possession and distribution. United States v. Bell, 954 F.2d 232, 235 (4th Cir. 1992).

The evidence was also sufficient on the gun counts. Williamson was properly convicted on the count of possessing a firearm with an obliterated serial number because the jury could have inferred that the gun, which was found in Williamson's bedroom, was the same gun Williamson pointed at Antwan Muse. Possession may be actual or constructive and may be proven by circumstantial evidence. See United States v. Pearce, 65 F.3d 22, 25-26 (4th Cir. 1995); United States v. Wright, 991 F.2d 1182, 1187 (4th Cir. 1993). The jury also could have properly inferred that Williamson knew that the serial number had been obliterated because the officers who seized the

7

weapon testified that it was obvious that the serial number had been defaced. See United States v. Moore, 54 F.3d 92, 101 (2d Cir. 1995) (knowledge of defacement may be inferred), cert. denied, 116 S. Ct. 793 (1996). The § 924(c) convictions were valid because Williamson used a firearm to threaten Antwan Muse when he believed Muse had stolen drugs from him. Porter used a firearm in his attempt to intimidate Shawn Muse. Williamson and Porter brandished firearms in an effort to scare Antwan and Shawn Muse; this use was "active employment" within the meaning of Bailey v. United States, 116 S. Ct. 501, 506 (1995). See United States v. Cook, 76 F.3d 596, 603 (4th Cir. 1996).[1]

Porter claims his conviction for witness intimidation was improper because he did not know for certain that Shawn Muse was a government informant. The version of 18 U.S.C. § 1513(a)(2) in effect when Porter threatened Muse prohibited threats made "with intent to retaliate against any person for [giving] any information relating to the commission or possible commission of a Federal offense." Porter called Muse a "snitch," and the jury could have inferred that Porter threatened Muse because he believed Muse had given information to the authorities, as Muse had in fact done. See United States v. Cofield, 11 F.3d 413, 419 (4th Cir. 1993), cert. denied , 114 S. Ct. 1125 (1994); United States v. Kibler, 667 F.2d 452, 453 (4th Cir.) (defendant told informant, "snitches get hurt . . . even in jail"), cert. denied, 456 U.S. 961 (1982). The jury could have concluded beyond a reasonable doubt that Porter threatened Muse in retaliation for his giving information to the police, information that led to Williamson's arrest and threatened the continuing success of the conspiracy.

III.

The defendants' next challenges relate to the propriety of Williamson's arrest and the search of the Williamson-Porter-Grant apartment. We hold that the arrest and the search were proper.

_____

**1** The instruction given the jury on the § 924(c) counts was overbroad in light of Bailey, and the defense did not object to the instruction at trial. Because of the overwhelming evidence that Williamson and Porter made active use of their weapons, they are not entitled to a new trial because the erroneous instruction did not rise to the degree of "plain error" required under United States v. Olano, 113 S. Ct. 1770, 1777-79 (1993).

8

A.

After Williamson threatened Antwan Muse, a warrant was issued for his arrest on February 24, 1994. Williamson was not actually arrested, however, until April 5, 1994. One reason for the delay was because Antwan Muse was not certain of Williamson's address, and therefore the police had difficulty finding Williamson. The arresting officer also testified that even after he learned where Williamson could be found, he delayed making the arrest because he did not wish to jeopardize the pending investigation and because he believed that if he moved too quickly the safety of either Shawn or Antwan Muse could have been endangered. The warrant was valid, and we believe the delay in execution was reasonable. See Hoffa v. United States, 385 U.S. 293, 310 (1966) ("There is no constitutional right to be arrested."); United States v. Hassan El, 5 F.3d 726, 730-31 (4th Cir. 1993) (stop is valid if made on objectively reasonable basis), cert. denied, 114 S. Ct. 1374 (1994); United States v. Bedford, 519 F.2d 650, 655-56 (3d Cir. 1975) (warrant is not stale if executed within a reasonable amount of time), cert. denied, 424 U.S. 917 (1976). The arrest was proper, and evidence taken from Williamson at that time was properly seized pursuant to a search incident to arrest.

B.

The search of the Williamson-Porter-Grant apartment also was proper because it was made pursuant to a warrant supported by probable cause.

The affidavit in support of the warrant contained some false information, but the district court considered the sufficiency of the affidavit absent the false information.[2] The redacted affidavit stated that when Williamson was arrested he "had in his possession a large amount of crack cocaine," that a "reliable informant has given information to [the detective] that Anthony Williamson stores crack cocaine inside the residence to be searched [the apartment]," and that in the past the informant provided "information that has led to sixteen (16) felony drug charges, with two (2) convictions and fourteen (14)

_____

[2] This procedure was correct. Franks v. Delaware, 438 U.S. 154, 171-72 (1978).

9

charges pending in court." In determining whether a warrant issued on probable cause, a court must consider the totality of the circumstances identified in the warrant's supporting affidavit. Illinois v. Gates, 462 U.S. 213, 230 (1983). Where a warrant is supported by the statements of a confidential informant, both the informant's record of reliability and his basis of knowledge in the particular case must be considered when determining whether the report of criminal activity outlined in the warrant is reliable. Id. at 233. Nevertheless, even if the affidavit does not adequately describe the informant's basis of knowledge, the warrant may still be upheld if the affidavit as a whole demonstrates probable cause. Id. This affidavit described Shawn Muse's successful track record. See McCray v. Illinois , 386 U.S. 300, 304 (1967); United States v. Shepherd, 714 F.2d 316, 317 (4th Cir. 1983), cert. denied, 466 U.S. 938 (1984). Furthermore, a large amount of crack was found on Williamson's person when he was arrested. This fact independently corroborated Muse's claim that Williamson was a drug dealer. See United States v. Lalor, 996 F.2d 1578, 1581 (4th Cir.), cert. denied, 114 S. Ct. 485 (1993). Viewing the affidavit as a whole, probable cause existed. See United States v. $149,442.43, 965 F.2d 868, 873-74 (10th Cir. 1992). Thus the evidence seized at the apartment was properly used and admitted at trial.

IV.

Harrell and Porter challenge their sentence calculations, claiming that the district court attributed too much cocaine to them. We disagree.

In drug cases, a "defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." U.S.S.G. § 1B1.3, Commentary (n.2). A defendant is liable for the acts of his co-conspirator if those acts "fall within the scope of" the criminal agreement, even if the defendant and his co-conspirator have not expressly agreed to undertake any particular act. United States v. Irvin, 2 F.3d 72, 75 (4th Cir. 1993) (quoting United States v. Jones, 965 F.2d 1507, 1517 (8th Cir.), cert. denied, 113 S. Ct. 346 (1992)), cert. denied, 114 S. Ct. 1086 (1994). The government must establish by a preponderance of the evidence that a par-

10

ticular amount of drugs may be attributed for sentencing purposes to a particular defendant. United States v. McDonald, 61 F.3d 248, 255 (4th Cir. 1995). The government may meet its burden by pointing to evidence adduced at trial, and the sentencing court may consider other reliable evidence without regard to whether it was or could have been admitted at trial. Id. On appeal, the sentencing court's determination of the quantity of drugs attributable to a defendant must be upheld unless clearly erroneous. Id.

The district court attributed the cocaine from the New York trip to Harrell. Harrell argues that the attribution was erroneous because the only evidence that Harrell intended to cook the cocaine into crack was Shawn Muse's testimony that Harrell said he planned to cook it. The district court's decision to credit Muse's testimony was not clearly erroneous.

The district court also overruled the probation officer's recommendation and attributed all 307.34 grams of crack involved in the conspiracy to Porter, saying "that the pre-sentence report [ ] [ ] didn't look at the overall involvement of this defendant to the extent that the court viewed it." The court found that Porter "attempted to make this overall venture succeed as a member of it, and his attempts to make the overall venture succeed, not some [discrete] segment of this venture, leaves me to believe that all of the drugs were reasonably foreseeable to him and [ ] [ ] he should be accountable for them. It's that simple." Porter argues that this finding was clearly erroneous because Porter was never found with drugs on his person, nor was he ever present when drugs were sold.

We believe the district court did not clearly err in holding Porter responsible for the entire conspiracy. Porter rented the apartment for Williamson and Grant, thus making it possible for them to store drugs, weapons, and cash there. Porter was with the other conspirators frequently and was in constant contact with them by means of telephone and pager. Finally, Porter threatened Shawn Muse, the informant whose testimony eventually brought down the entire conspiracy. The court reasonably could have concluded that Porter was the group's enforcer and that he was intimately connected with every aspect of its operation. As the district court noted, "Quite frequently in a drug conspiracy the man at the top doesn't line his pockets with

11

the drugs. He is not the one that has the crack cocaine in his underwear at the time that he's arrested." The defendants were properly sentenced.

## V.

We have fully considered the defendants' remaining claims of error, but we find those claims also to be without merit.[3] We affirm the convictions and sentences.

<u>AFFIRMED</u>

_____

[3] Porter has filed a motion to file a supplemental brief and a motion to modify the record to include the transcript of his September 6, 1994, suppression hearing. The motions are granted. We have fully considered the new materials, but we believe that Porter's additional claims of error are meritless.

12